UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUANITA TURNAGE,

        Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 3:14-cv-12

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; (2) PLAINTIFF'S REQUEST FOR A SENTENCE SIX REMAND BE DENIED; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 11), Plaintiff's reply (doc. 12), the administrative record (doc. 6),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.    Procedural History

Plaintiff filed for DIB and SSI on December 16, 2009 alleging a disability onset date of January 1, 2006.  PageID 222-32.  Plaintiff suffers from a number of impairments including, among others, congestive heart failure, dilated cardiomyopathy, obesity, diabetes, chronic obstructive pulmonary disease ("COPD"), major depressive disorder and post-traumatic stress disorder ("PTSD").  PageID 77.

After initial denials of her applications, Plaintiff received a hearing before ALJ Irma J. Flottman on August 28, 2012.  PageID 95-133.  On September 13, 2012, the ALJ issued a written decision finding Plaintiff not disabled.  PageID 74-87.  Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since November 3, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: congestive heart failure; dilated cardiomyopathy; obesity; diabetes mellitus; chronic obstructive pulmonary disease (COPD); hypertension; GERD; chronic abdominal pain; paralyzed diaphragm; major depressive disorder/dysthymic disorder/bereavement; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform

2

sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[4] with the following limitations:  no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs, stooping, or overhead reaching; frequent balancing, kneeling, crouching, and crawling; no more than occasional exposure to extreme cold, wetness, humidity and irritants such as fumes, odors, dust, gases, and poorly ventilated areas; work limited to simple, routine, and repetitive tasks; no strict production rate or pace work; and only occasional interaction with the public and coworkers.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born [in] . . . 1967 and was 38 years old, which is defined as a younger individual, age 18-44, on the alleged onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from November 3, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 77-87.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 62-64.  *See*

---

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  *Id.* § 404.1567(a).

*Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff then filed this timely appeal.  *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

### B.   Evidence of Record

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case.  PageID 77-85.  Plaintiff, in her Statement of Errors, also sets forth an extensive summary of the evidence of record.  Doc. 8 at PageID 1294-98.  The Commissioner's response to the Statement of Errors presents no separate statement of facts, but incorporates relevant facts into the arguments presented.  Doc. 11 at PageID 1317.  Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence.

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference."  *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B. "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work

experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

In her Statement of Errors, Plaintiff argues that the ALJ erred in failing to: (1) find that her knee impairment was severe;[5] (2) properly assess her RFC based upon her severe knee impairment; and (3) properly assess her credibility pursuant to applicable regulations. Doc. 8 at PageID 1300-06. In addition, Plaintiff argues that new and material evidence exists warranting remand pursuant to Sentence Six of 42 U.S.C. § 405(g) -- namely, a statement by Plaintiff's treating cardiologist days immediately before her administrative hearing that cleared her cardiovascularly for knee surgery. *Id.* at PageID 1301-02.

### A.     Sentence Six Remand

Initially, the Court addresses the issue of remand pursuant to Sentence Six of 42 U.S.C. § 405(g). Plaintiff contends that a Sentence Six remand is appropriate because of a treatment note dated August 22, 2012 from treating physician Patrick Lytle, M.D. -- a cardiologist -- referencing a right knee, non-joint replacement surgery. *See* PageID 1286; *see also* doc. 8 at PageID 1301-02. Notably, the record cited to by Plaintiff only states that Dr. Lytle found

---

[5] In the caption of her first assignment of error, Plaintiff also argues that the ALJ erred in failing to find that her heart condition had worsened. However, the argument presented throughout her first assignment of error focuses solely upon her knee impairment. Based upon Plaintiff's failure to present any substantive argument in support of her contention that the ALJ erred in failing to find that her heart condition has worsened, the undersigned focuses on her arguments concerning her knee impairment and deems argument regarding her heart impairment waived. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) (concluding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citation omitted).

Plaintiff faced a low risk of "cardiovascular complications" should she undergo right knee surgery. *See* PageID 1286. As noted by the Commissioner, *see* doc. 11 at PageID 1322, Plaintiff points to no record of any surgery actually being scheduled, performed, or even recommended by any physician.

"To obtain a [S]entence-[S]ix remand, a claimant has the burden to establish that there is (1) new evidence; (2) which is material; and (3) that there is good cause for the failure to submit it to the ALJ." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013) (citation omitted). The Court is strongly committed to reaching the merits of every case, particularly Social Security disability cases where there is a possibility that a plaintiff is entitled to disability benefits. *See Goldsmith v. Comm'r of Soc. Sec.*, No. 3:12-cv-191, 2013 WL 3989642, at *5 (S.D. Ohio Aug. 2, 2013). If there were a reasonable and legitimate basis for such a remand, the Court would make such a recommendation. The Court, however, is constrained by the United States Supreme Court's opinion in *Melkonyan v. Sullivan*, 501 U.S. 89 (1991), holding that a Sentence Six remand is permitted only when, *inter alia*, the new medical records in question are "material" to the question of Plaintiff's disability. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483–88 (6th Cir. 2006).

Here, the Commissioner argues that: (1) such evidence is not "new" because it predates the August 28, 2012 administrative hearing; (2) Plaintiff fails to meet her burden of demonstrating good cause for failing to submit the evidence to the ALJ before the hearing; and (3) Plaintiff fails to demonstrate that the purportedly new evidence is material. Doc. 11 at PageID 1321-24. Assuming, *arguendo*, that the evidence is "new" and, further, that Plaintiff's failure to produce the evidence to the ALJ is supported by good cause, the records presented are not "material", *i.e.*, there is not "a reasonable probability that the [Commissioner] would have

7

reached a different disposition of the disability claim if presented with the new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations omitted).  As noted by the Commissioner, *see* doc. 11 at PageID 1323, Dr. Lytle's note does not -- as Plaintiff suggests -- indicate "that [Plaintiff] was indeed scheduled for right knee non-joint replacement surgery." Doc. 11 at PageID 1300; *see also* PageID 1286.  The note simply states that Dr. Lytle found Plaintiff cardiovascularly healthy enough to have surgery.  PageID 1286.

The evidence regarding the contemplated surgery is also cumulative.  "Cumulative evidence does not constitute good cause for remand."  *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980).  The ALJ already considered evidence regarding "possible knee surgery[.]" PageID 98.  In addition, Plaintiff herself testified regarding Dr. Donahue's supposed desire to perform right knee surgery -- a recommendation Plaintiff does not corroborate with citation to any records of Dr. Donahue.  *See* PageID 111.[6]  Given the foregoing, the information Plaintiff seeks to place before the ALJ on a Sentence Six remand -- *i.e.*, that right knee surgery was, perhaps, contemplated -- was already before the ALJ during the administrative hearing.  *See* PageID 98, 111.

Finally, Plaintiff also fails to establish how such evidence would alter the ALJ's non-disability finding.  Significantly, Plaintiff points to nothing in the record -- including the "new" evidence upon which she seeks a remand -- indicating any limitations arising from her knee impairment.  Accordingly, the undersigned recommends that Plaintiff's request for a Sentence Six remand be denied.

---

[6] A record dated June 14, 2012 states that Plaintiff was referred "for consultation to see if surgical intervention for [right] knee would be beneficial."  PageID 1033.

### B.    Knee Impairment as Severe

In her first and second assignments of error,[7] Plaintiff contends that the ALJ committed reversible error by failing to find that her knee impairment constituted a severe impairment at Step Two of the sequential analysis and, in addition, failed to determine how her knee impairment impacted her RFC at Step Five.    While the ALJ found that Plaintiff's knee impairment was not "severe" pursuant to 20 C.F.R. §§ 404.1509 and 416.909, she did conclude that Plaintiff suffered from a number of other severe impairments, including, among others: congestive heart failure; dilated cardiomyopathy; obesity; diabetes; COPD; major depressive disorder; and PTSD.  PageID 77-78.

"The regulations define a 'severe' impairment as one which 'significantly limits' the claimant's physical or mental ability to do basic work activities."  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 426 (6th Cir. 2007) (citing 20 C.F.R. § 404.1520(c)).  Such an impairment must "be expected to last 'for a continuous period of not less than 12 months.'"  *Bywater v. Comm'r of Soc. Sec.*, No. 1:13cv1001, 2014 WL 4371441, at *5 (W.D. Mich. Sept. 3, 2014) (citing 42 U.S.C. § 423(d)(1)(A)).

Here, Plaintiff does not take issue with the ALJ's finding that objective treatment records from May 11, 2012 -- around the time of Plaintiff's first complaints of knee pain and only approximately one-and-a-half months before her date of last insured (June 30, 2012) -- revealed no abnormalities.  PageID 78, 1068-69.  At that time, physicians opined that Plaintiff's knee

---

[7] In her second assignment of error, Plaintiff also argues that the ALJ erred by failing to include in the RFC certain limitations arising from her mental health impairments that she testified to at the administrative hearing -- namely, that she has several bad days a week where she lies in bed all day. Plaintiff contends that, based upon her testimony, the ALJ's RFC finding should have included a limitation that she would miss more than two days of work per week as a result of her mental health impairments.  Doc. 8 at PageID 1303.  Because such argument turns on the ALJ's finding regarding Plaintiff's credibility, such argument is addressed *infra* when analyzing Plaintiff's arguments concerning the ALJ's credibility finding.

complaints could "be managed as an outpatient with . . . wraps." PageID 1208. In addition, physical examinations, while showing swelling above Plaintiff's patella, also revealed "good range of motion." *Id.*

In asserting the existence of a severe knee impairment, however, Plaintiff points to a magnetic resonance imagining ("MRI") finding on July 30, 2012 -- a month after her date of last insured, *see* PageID 1114 -- and her testimony regarding anticipated right knee surgery, *see* PageID 111 -- as support for her contention. Doc. 8 at PageID 1300. While the record contains evidence that Plaintiff objectively suffers from a right knee impairment, other evidence in the record reasonably relied upon by the ALJ, *see* PageID 78, 1068-69, 1208, lends support to the ALJ's ultimate conclusion that such an impairment was not severe. "[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to ALJ's decision if it is supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (citation omitted).

Nevertheless, assuming, *arguendo*, that substantial evidence did not support the ALJ's conclusion, the undersigned would still find no reversible error present. No reversible error is committed at Step Two where, as here, the ALJ determines the claimant has at least one other severe impairment, and then considers all of the claimant's other alleged impairments in the subsequent steps of the disability evaluation. *See  Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).[8]

---

[8] In analyzing Plaintiff's RFC, the ALJ specifically mentioned Plaintiff's allegations -- set forth in her testimony at the administrative hearing -- that she is unable to work due to all of her alleged impairments, including her allegations of "knee pain." PageID 80.

## B.    Credibility

In her third assignment of error, and as part of her second assignment of error, Plaintiff argues the ALJ erred in assessing her credibility with regard to her mental health symptoms and including, within the RFC finding, a limitation that she would miss "more than two days [of work] per month" as a result of her mental health impairment -- a limitation set forth only by Plaintiff's own testimony[9] and not opined by any medical source.  Doc. 8 at PageID 1303-06.

The ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247.  A claimant's credibility comes into question where his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id*.  To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*.  To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*.  This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

---

[9]  Plaintiff contends that evidence supports a contention that "she would be absent from work well more than two days per month" based upon her testimony at the administrative hearing.  She testified that, on a bad day, she is "in the bed all day," she is "[d]epressed because of the situation [she's] going through, [and] all the medication [she's] on." *See* PageID 123.  Vocational Expert Salome Srinibasan testified that an individual who would be "absent two days a month on a consistent basis could [not] retain competitive work." PageID 131.

Here, Plaintiff challenges the ALJ's determination of her credibility only insofar as it concerns her statements regarding the limiting effects of her mental health impairments.  Doc. 8 at PageID 1304-06.  In assessing the limitations arising from her mental impairments, the ALJ found a number of limitations or restrictions on Plaintiff's ability to work; namely, that Plaintiff was "limited to simple, routine, and repetitive tasks; no strict production rate or pace work; and only occasional interaction with the public and coworkers."  PageID 80.  Again, Plaintiff contends that the ALJ should have included the additional limitation that "she would be absent from work well more than two days per month[.]"  Doc. 8 at PageID 1303.

Plaintiff contends that the ALJ, in assessing her credibility, erroneously: (1) found that objective evidence did not support her complaints; (2) focused on her higher Global Assessment of Functioning ("GAF") scores[10] while minimizing her low GAF scores; and (3) relied on her limited mental health treatment.  Doc. 8 at PageID 1304-06.

### 1.    Objective Evidence

With regard to the ALJ's consideration of objective evidence in discounting Plaintiff's credibility, the Sixth Circuit concludes that "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" and "consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than

---

[10]  GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV").  "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice").  As set forth in the DSM-IV, however, a GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." DSM-IV at 34.  A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id*.

those in the field of medicine." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citation and alterations omitted).  Instead, with regard to mental health impairments, "clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Id.* (citation omitted).  In other words, many times in the realm of mental health impairments, clinical observations made by mental health professionals serve as the only objective evidence available to substantiate the existence, persistence, and limiting effects of such impairments.  *See id.*

Here, in finding that Plaintiff's "complaints of disabling mental symptoms are . . . unsupported by objective medical evidence[,]" the ALJ noted the clinical findings of Mary Ann Jones, Ph.D., a consultative psychologist, who noted that Plaintiff demonstrated, among other clinical findings, "fair hygiene; cooperative behavior; relevant and coherent speech; no evidence of delusions, hallucinations, or paranoia; and minimal information and judgment sufficient to live independently and make important decisions about her future."  PageID 83, 484.  The ALJ also noted the clinical findings of Stephanie Ackner, M.D. -- who examined Plaintiff on October 5, 2010 when Plaintiff presented to Samaritan Behavioral Health for evaluation -- that Plaintiff exhibited "only a moderately depressed mood and a mildly constricted affect[,]" as well as "fair to good insight and judgment, cooperative behavior, good hygiene, clear speech, logical thought processes, no evidence of delusions or hallucinations, no evidence of suicidal or homicidal ideation, and no impairment of memory, attention, or concentration."  PageID 83.

The undersigned finds no error in the ALJ's conclusion that Plaintiff's "complaints of disabling symptoms are . . . unsupported by objective medical evidence" based upon her consideration of Drs. Jones's and Ackner's clinical observations.  PageID 83.  Accordingly, the undersigned concludes that substantial evidence supports the ALJ's statement in this regard.  *See*

*Blakley*, 581 F.3d at 406 (citations omitted) (stating that "even if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to ALJ's decision if it is supported by substantial evidence).

### 2.      Global Assessment of Functioning Scores

Next, Plaintiff argues that the ALJ erred in relying only upon higher GAF scores in the record while minimizing her lower GAF scores to her detriment.  Doc. 8 at PageID 1305.  The undersigned first notes that no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citation omitted).  Thus, "Sixth Circuit law is clear that there is no requirement for the ALJ to either specifically reference a plaintiff's GAF scores or to give a reason for not doing so." *Farley v. Colvin*, No. 2:11-0123, 2013 WL 5727389, at *10 (M.D. Tenn. Oct. 21, 2013); *see also Puterbaugh v. Colvin*, No. 3:12cv00031, 2013 WL 3989581, at *14 (S.D. Ohio Aug. 2, 2013) (finding that "the ALJ was not required to assign any weight to . . . treatment notes or GAF scores"); *Jones v. Colvin*, No. 09C7645, 2013 WL 1407779, at *14 (N.D. Ill. Apr. 8, 2013) (stating that "neither the Social Security regulations nor case law requires an ALJ to determine the extent of an individual's disability based entirely on his GAF score") (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

The undersigned finds no merit to Plaintiff's contention in this regard.  First, in noting the GAF score of 63[11] assigned to Plaintiff by Dr. Jones, the ALJ merely referenced the fact that such score was consistent with Dr. Jones's ultimate conclusion that Plaintiff's mental impairment was moderate (and thus non-disabling).  PageID 83.  Second, the ALJ reasonably placed more weight on the clinical findings  -- noted *supra* -- than on GAF scores at 50 or below.  *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013) (finding no error, and the ALJ's explanation "reasonable," where the ALJ relied more heavily on a psychiatrist's "detailed narrative summary" than on the GAF score assessed).  As a result, the undersigned recommends that such alleged error be overruled.

### 3.    Limited Mental Health Treatment

Finally, Plaintiff argues that the ALJ erred in considering her limited mental health treatment when casting doubt on her allegations of disabling mental health symptoms.  Doc. 8 at PageID 1306.  Specifically, the ALJ stated that:

> The claimant's treatment history is also inconsistent with a finding of disabling mental symptoms.  As discussed above, the claimant presented to only two therapy sessions at Daymont and failed to return for treatment. The record shows no subsequent mental health treatment, as well as no psychiatric hospitalization.   The claimant's limited mental health treatment casts some doubt on her allegations about the severity of symptoms she experienced after the alleged onset date of disability.

PageID 84.

---

[11]   The Court notes that a review of Dr. Jones's report reveals that she actually assigned Plaintiff a GAF score of 53.  PageID 486 (stating that "[a] final GAF score of 53 has been assigned").  While certainly a lower score than the 63 score noted by the ALJ, a GAF of 53, just as with a score of 63, still "is indicative of '[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)' or 'moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).'"  *See* DSM-IV at 34.  Such moderate symptoms are generally non-disabling. *Cf. Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011) (noting that "moderate" functional limitations are "non-disabling"); *see also Dunmore v. Colvin*, 940 F. Supp.2d 677, 686 (S.D. Ohio Mar. 4, 2013).

The Sixth Circuit holds that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation[,]" and that failure to seek treatment "should not be a determinative factor in a credibility assessment." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  On the other hand, Social Security Ruling 96-7p provides that a claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).

However, an ALJ cannot discount a claimant's credibility based upon "a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id*.  In this regard, the ALJ "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id*.

Here, Plaintiff gave a reason for discontinuing her mental healthcare treatment at Daymont Behavior Health Care -- "I just wasn't satisfied with the treatments" -- and testified regarding activities she does on her own to assist with her depression -- *i.e.*, talk with family members.  PageID 122.  The ALJ "did not mention [Plaintiff's] explanation[,]" *LaRiccia*, 549 F. App'x at 387, and never inquired as to why Plaintiff failed to seek further medical treatment. *See* PageID 122-23.  As a result, the record before the Court reveals that the ALJ -- contrary to the requirements of SSR 96-7p -- failed to "consider[] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical

visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. The undersigned concludes that the ALJ's failure in this regard amounts to error.

However, the undersigned further finds such error harmless in light of the conclusion -- set forth *supra* -- that substantial evidence supports the ALJ's analysis that clinical findings demonstrate no more than moderate impairments; and, further, in light of the fact that no medical source of record opines that Plaintiff is more limited than as set forth in the RFC.

### D. Conclusion Regarding Alleged Errors

Having carefully reviewed the voluminous administrative record and the arguments presented in the parties' briefs, and also having carefully considered the ALJ's analysis leading to the non-disability finding here at issue, the Court finds the ALJ carefully and reasonably reviewed the record; appropriately considered Plaintiff's symptoms and allegations of disabling physical and mental impairments; reasonably determined she was not fully credible; and appropriately determined her RFC. Thus, as more fully explained above, the undersigned finds the ALJ's decision supported by substantial evidence, and recommends that the Court affirm the ALJ's non-disability finding.

### IV.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**;

2. Plaintiff's request for a Sentence Six remand be **DENIED**; and

3. This case be **CLOSED** on the docket of this Court.

Date:  January 12, 2015                              *s/ Michael J. Newman*
                                                     Michael J. Newman
                                                     United States Magistrate Judge

17

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).